IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| v. | |
| ERIC WILLIAMS<br>**63311-066** | NO.  08-CR-310 |

**MEMORANDUM AND ORDER**

**JOYNER, J.**                                                                                          **July 30, 2021**

Presently before the Court is Defendant's *Pro Se* Motion to Reduce Sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Doc. No. 56), the Government's Response in Opposition (Doc. No. 57), and Defendant's Reply to the Government's Response (Doc. No. 60). For the reasons below, Defendant's motion shall be denied.

**Factual Background**

In the five month span between September 2007 and January 2008, Defendant Eric Williams committed four gunpoint bank robberies. He was indicted in May 2008 and entered a guilty plea in November of that year to four counts of armed bank robbery in violation of 18 U.S.C. § 2113(d). Purported to have been motivated by a crippling substance addiction, (Defense Sentencing Memorandum [Doc. No. 31] at pp. 7-8), the events of

1

each offense are startling; Defendant violently threatened bank tellers in order to ensure their compliance. He achieved this intimidation through heinous means, including pointing his semi-automatic pistol directly at the tellers and threatening to use it in a deadly manner. (Government's Response in Opposition to Defendant's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) [Doc. No. 57] at pp. 2-3) [hereinafter Government's Response]. These actions had lasting detrimental psychological effects on the employees of the bank. (Government's Sentencing Memorandum [Doc. No. 30] at pp. 5-6). As consequence of these criminal actions, Defendant was sentenced by this Court in April 2009 to 188 months of incarceration.

Now, having served 141 months of his sentence, Defendant presently moves to be released pursuant to 18 U.S.C. Section 3582(c)(1)(A)(i). Specifically, Defendant presents multiple reasons for why his release might be appropriate, including his ongoing epilepsy, the COVID-19 pandemic's ill effects on his mental health, his desire to be a caregiver for his grandmother, and his averred rehabilitation.

## Legal Authority

Ordinarily, a federal court is unable to modify a term of imprisonment once it has been imposed. However, some exceptions

to this general rule exist. 18 U.S.C. § 3582(c)(1)(A)(i) provides one such exception, stating:

> **(A)** [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
> **(i)** extraordinary and compelling reasons warrant such a reduction;. . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

While Section 3582(c)(1)(A)(i) does not define reasons which qualify as "extraordinary and compelling," guidance is

found in the Commentary to the applicable policy statement for "Reduction in Term of Imprisonment under 18 U.S.C. Section 3582(c)(1)(A)," Section 1B1.13 of the U.S. Sentencing Guidelines. *See United States v. Georgiou*, No. 09-088, 2021 WL 1122630, at *4 (E.D. Pa. Mar. 23, 2021) (explaining that Congress delegated the authority to describe such reasons to the Sentencing Commission). Section 1B1.13 contemplates situations that meet the "extraordinary and compelling" requirement to include serious medical conditions, deterioration of health due to aging, and certain family circumstances.[1] U.S. Sent'g Guidelines Manual § 1B1.13 cmt. n.1(A)-(C). Defendant carries the burden of establishing that such extraordinary and compelling reasons exist. *United States v. Adeyemi*, 470 F. Supp. 3d. 489, 512 (E.D. Pa. 2020).

Section 3582(c)(1)(A) further specifies that we must examine Defendant's motion in light of the sentencing factors enumerated

---

[1] The Commentary to Section 1B1.13 also includes a "catch-all" provision which has been applied to the courts in light of the First Step Act's amendments to the compassionate release statute. *United States v. Neal*, 2020 WL 5993290, at *1 (E.D. Pa. Oct. 9, 2020). While the government contests this conclusion, many members of this Court have found Section 1B1.13 to provide guidance on the issue, but not otherwise bind the Court in its assessment of whether extraordinary and compelling reasons exist. *See United States v. Rodriguez*, 457 F. Supp. 3d 392, 398 (E.D. Pa. 2020) ("the policy statement may provide 'helpful guidance' but does not limit the Court's independent assessment of whether 'extraordinary and compelling reasons' exist under § 3582(C)(1)(A)(i)"); *See also United States v. Adeyemi*, 470 F. Supp. 3d 489, 512 (E.D. Pa. 2020) ("Because the Sentencing Commission has not amended its policy statement after the passage of the First Step Act. . . we may independently determine extraordinary and compelling reasons in line with the rest of the Commission's commentary not rendered contradictory to federal law.").

in Section 3553(a). We must also determine if Defendant's release would pose a risk to the community under 18 U.S.C. Section 3142(g). U.S. Sent'g Guidelines Manual § 1B1.13 cmt. n.2. The Section 3553(a) factors are as follows:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and to provide the defendant with needed vocational or educational training, medical care or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant…
>
> (5) any pertinent policy statement issued by the Sentencing Commission … in effect on the date the defendant is sentenced;

> (6) the need to avoid unwarranted sentence disparities between defendants with similar records convicted of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. Section 3553(a)(1)-(7).

In summary, a sentencing court may reduce an inmate's term of imprisonment only when the following four conditions are met: (1) the Defendant has satisfied the administrative exhaustion requirement; (2) the Court has found that there are extraordinary and compelling reasons that warrant such a reduction; (3) any reduction granted by the Court must be consistent with Section 1B1.3 of the U.S. Sentencing Guidelines; and (4) the reduction is consistent with the factors outlined in Section 3553(a). *Georgiou*, 2021 WL 1122630, at *5.

### Administrative Exhaustion

First, we must determine that Defendant has cleared the procedural hurdle of waiting thirty days after his facility's warden received the request for release. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (concluding that Section 3582 demands strict compliance with its administrative requirement). Defendant's motion shows that his request was sent

to the warden of his correctional facility on October 5, 2020, and that no response was received by November 14, 2020. As thirty days had lapsed, the procedural hurdle was cleared, and we are able to continue on to the next stage of the analysis.

### **Extraordinary and Compelling Reasons**

Defendant presents four possible reasons for his compassionate release. We find that none are sufficiently "extraordinary and compelling" to merit granting his motion.

First, Defendant states that his release is appropriate on the basis of his epilepsy. (Defendant's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3528(c)(1)(A)(i) [Doc. No. 56] at pg. 1) [hereinafter Defendant's Motion]. While we acknowledge the challenges that such a condition might present to an incarcerated individual, "chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." *United States v. Weidenhammer*, No. CR-16-01072-001-PHX-ROS, 2019 WL 6050264, at *5 (D. Ariz. Nov. 8, 2019); *See also United States v. Gordon*, No. 15-496-1, 2020 WL 5017641 (E.D. Pa. Aug. 24, 2020) (holding that a defendant with epilepsy who had not suffered a seizure in five years failed to establish extraordinary and compelling reasons for their release). Defendant's medical records suggest that FCI Gilmer is fully capable of managing his epilepsy via medication and other

7

accommodations—Defendant has experienced zero seizures during his over decade-long incarceration. Thus, Defendant's epilepsy alone does not present an extraordinary and compelling reason for his release.

The government notes that Defendant has not averred that the current COVID-19 pandemic presents an extraordinary and compelling medical reason for his release given his epilepsy. (Government's Response at pg. 9). They are correct in stating that even if such a claim were to have been raised, it would be insufficient on the current facts. As the Third Circuit has held, ". . .the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *Raia*, 954 F.3d at 597. Rather, a defendant seeking release due to COVID-19 must show that (1) individualized circumstances such as age or medical condition put them at serious risk of grave illness or death if infected by COVID-19; and (2) actual risk of exposure to COVID-19 at the facility in which they are incarcerated. *United States v. Tartaglione*, No. 15-491, 2020 WL 3969778, at *5 (E.D. Pa. July 14, 2020).

While evolving understandings of the COVID-19 virus have resulted in previous findings to the contrary, epilepsy is no longer understood by the CDC to be a risk factor that increases

likelihood of a severe reaction to COVID-19. *Compare United States v. Bandrow*, 473 F. Supp. 3d 778, 782 (E.D. Mich. 2020) (citing the CDC website and multiple other studies that suggested epilepsy was a serious risk factor for COVID-19) *with COVID-19: People with Certain Medical Conditions*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated May 13, 2021) *and United States v. Cornish*, No. 17-208-2, 2020 WL 6870575, at *1 (E.D. Pa. Nov. 23, 2020) (citing changed understandings of epilepsy as a risk-factor for COVID-19 and subsequently denying compassionate release in spite of the defendant's alleged epilepsy). Further support for our conclusion is provided by the Epilepsy Foundation's findings that according to available scientific data, epilepsy alone neither increases one's risk of contracting COVID-19, nor the severity of symptoms experienced. *COVID-19 and Epilepsy*, Epilepsy Found. (Feb. 28, 2020), https://www.epilepsy.com/learn/covid-19-and-epilepsy. As Defendant's epilepsy does not put him at increased risk of severe reaction to COVID-19, the virus does not present an extraordinary and compelling reason for his release.

Even if Defendant's epilepsy were to be considered a COVID-19 risk factor, it is important to note that he has received

9

both of the recommended doses of the Pfizer COVID-19 vaccine. The CDC's website states that "[b]ased on evidence from clinical trials in people aged 16 years and older, the Pfizer-BioNTech vaccine [is] 95% effective at preventing laboratory-confirmed COVID-19 illness in people without evidence of previous infection." *COVID-19: Pfizer-BioNTech COVID-19 Vaccine Overview and Safety*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/Pfizer-BioNTech.html (last updated May 27, 2021). FCI Gilmer also currently has zero cases of inmates or staff that have tested positive for COVID-19. *COVID-19 Cases*, Bureau of Prisons, https://www.bop.gov/coronavirus/ (last updated June 10, 2021) (scroll down to "COVID-19 Cases" and click the "Full breakdown and additional details" link). Such a negligible risk of contraction can hardly be considered to present an extraordinary and compelling reason for release. *See, e.g.*, *United States v. Singh*, No. 4:15-CR-00028-11, 2021 WL 928740 (M.D. Pa. Mar. 11, 2021) (denying motion for compassionate release despite the presence of underlying COVID-19 risk factors because of the defendant's vaccination).

Second, Defendant alleges that his fear of losing his family due to the COVID-19 pandemic, in tandem with both the

10

stress generated by FCI Gilmer's COVID-19 restrictions on movement, as well as the stress from his suffering with epilepsy, present an extraordinary and compelling reason for his release. (Defendant's Reply to Government's Response in Opposition to Defendant's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) [Doc. No. 60] at pp. 1-2). While mental health issues are not categorically excluded from being "extraordinary and compelling reasons," *United States v. Hight*, 488 F. Supp. 3d 184, 191 (E.D. Pa. 2020), Defendant must still make a showing that approaches the gravity of the reasons expressed in Section 1B1.13. We do not discount the very real fears and anxieties that Defendant may be experiencing due to the COVID-19 pandemic. However, Defendant presents no evidence that suggests the combination of stressors generated by his incarceration during this pandemic are "extraordinary and compelling" to a point that would render his release appropriate. *See United States v. Carter*, 469 F. Supp. 3d 583, 590 (S.D. WV 2020) (denying the defendant's motion for compassionate release because of a lack of sufficient evidence to evaluate the "interplay between [their] medical conditions, the prison conditions. . ., and the virus. . ."); *See also United States v. Anderson*, No. 17-cr-00595-YGR-1, 2020 WL 28387971, at *2 (N.D. Cal. June 1, 2020) (denying motion for

11

compassionate release because the defendant failed to present any evidence regarding the severity of his depressive disorder).

Third, Defendant lists his desire to provide care for his grandmother among the reasons making his compassionate release appropriate. (Defendant's Motion at pg. 2). The Commentary to Section 1B1.13 lists two "family circumstances" that each represent extraordinary and compelling reasons for compassionate release: "(1) [the] death or incapacitation of the caregiver of defendant's minor child or children; and (2) [the] incapacitation of defendant's spouse or registered partner when defendant would be the only available caregiver for the spouse or registered partner." U.S. Sent'g Guidelines Manual § 1B1.13 cmt.n.1(C). While this guidance is neither exhaustive nor binding, "[in] any event, 'judges in this District have yet to find care for elderly or ill parents r[i]ses to the level of extraordinary and compelling circumstances warranting release.'" *United States v. Siberio-Rivera*, No. 17-00320-6, 2020 WL 7353367, at *1 (E.D. Pa. Dec. 15, 2020) quoting *United States v. Moore*, No. 14-209-2, 2020 WL 7024245, at *5 (E.D. Pa. Nov. 30, 2020); *See also United States v. Gaskin*, No. 15-352, 2020 WL 7263185, at *4 (E.D. Pa. Dec. 9, 2020) quoting *United States v. Ingram*, No. 2:14-cr-40, 2019 WL 3162305, at *2 (S.D. Ohio July 16, 2019) ("[m]any, if not all inmates, have aging and sick parents. Such circumstance is not extraordinary"). Accordingly,

12

Defendant's bare desire to care for his grandmother is insufficient.

Even if the Court were to find a desire to care for one's elderly parents or grandparents as an extraordinary and compelling reason for release, Defendant has failed to show that his grandmother is incapacitated or that he is the only available caregiver for her. Defendant merely wishes to look after his seemingly healthy grandmother and assist her with routine activities such as taking her to the market and helping around the house. (Defendant's Motion at pg. 2). To hold that these circumstances present extraordinary and compelling reasons for release would represent a stark departure from the outsize showing of incapacitation this Court has deemed necessary in the past. *See, e.g.*, *United States v. Cruz-Rivera*, No. 11-43, 2020 WL 5993352, at *7 (E.D. Pa. Oct. 9, 2020)(holding the defendant failed to establish his wife's incapacitation despite medical records confirming that she suffered from both diabetes and breast cancer).

Furthermore, as the government points out, Defendant has neglected to represent why he alone, despite the potential availability of other family members including his mother and two maternal half-brothers, is capable of providing care to his grandmother. (Government's Response at pp. 11-12). While

Defendant has presented reasons why his grandmother's son, who currently resides with her, might not be the best individual to take care of her, (Defendant's Motion at pg. 2), increased burdens on the family and their ability to provide less than ideal levels of care are unpersuasive. *See, e.g.*, *Moore*, 2020 WL 7024245, at *5 (denying the defendant's motion for compassionate release because his sister and cousin, despite feeling overwhelmed by their full-time jobs, were otherwise capable of caring for his mother who suffered from dementia); *See also, e.g.*, *United States v. Irizzary*, No. 14-652-13, 2021 WL 735779, at *8 (E.D. Pa. Feb. 25, 2021) (denying motion for compassionate release because the defendant failed to show why his wife and their two adult children were incapable of acting as caregivers for his brother who suffered from cerebral palsy).

Fourth, Defendant separately suggests that his efforts to avail himself of educational and vocational opportunities, as well as his completion of a 500-hour BOP drug program, present grounds for his release. (Defendant's Motion at pp. 2-3). While Defendant's efforts should be applauded, Note Three of the Commentary to Section 1B1.13 specifically states that "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." As none of the reasons for compassionate release

presented by Defendant otherwise rise to the level of "extraordinary and compelling," his motion must be denied.

### Section 3553(a) Factors

Even if we were to find Defendant's reasons for release to be compelling, the Section 3553(a) factors would counsel against his release. At the time this motion was filed, Defendant had served 141 months of a 188 month sentence, equal to about 75% of the total. A sentence reduction of 25% would not "reflect the seriousness" of the series of gunpoint robberies committed by the defendant, nor would it "promote respect for the law." These were violent crimes that had serious lasting effects on their victims. (Government's Sentencing Memorandum [Doc. No. 30] at pp. 5-6). To stray from the Defendant's carefully considered sentence would be to discount the severity of his actions.

Section 3553(a)(2) also requires us to consider "the need for the sentence imposed to. . . provide the defendant with needed vocational or educational training, medical care or other correctional treatment in the most effective manner." We commend Defendant for taking full advantage of the educational and vocational opportunities afforded to him during his incarceration. Through activities such as the completion of a 500-hour BOP drug program, earning his GED, and finishing his electrician's certificate, Defendant has shown that he is

committed to the betterment of his life and that he seeks to become a productive member of society. While Defendant's achievements in relation to this factor certainly suggest that his release may be appropriate, we find that it is ultimately outweighed by those previously discussed.

### Risk of Danger to the Community

Finally, we must assess whether the Defendant is a "danger to the safety of any other person or to the community as provided in 18 U.S.C. Section 3142(g)." U.S. Sent'g Guidelines Manual § 1B1.13. Section 3142(g) presents multiple factors for us to consider, the most salient of which are: (1) the nature and circumstances of the offense charged; (2) the history and characteristics of the person; and (3) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g)(1), (3)-(4).

Some considerations mitigate the degree of risk Defendant might be expected to pose to the community. His completion of a 500-hour BOP drug program certainly provides hope that his past challenges with substance addiction will not resurface or otherwise prompt future criminal conduct. Furthermore, judging by the multiple letters sent on behalf of Defendant by family members, as well as Defendant's desire to care for his

grandmother, it would appear Defendant has a strong familial support system to help ease his re-entry into society.

Despite these positives, other factors lead us to conclude that Defendant's release would present a risk to the community. As aforementioned, the nature and circumstances of the crimes for which Defendant is currently incarcerated, a series of gunpoint bank robberies, are particularly odious. Defendant also has a long history of violent crime, having been convicted of multiple robberies and gun offenses between 1997 and 1998. While those decades-old crimes might be characterized as the result of poor decisions in Defendant's youth, the instant offenses were alleged to have been the result of a gripping substance addiction. (Defense Sentencing Memorandum [Doc. No. 31] at pp. 7-8). Defendant's record while incarcerated is also concerning; he has multiple disciplinary infractions including a 2017 assault, which fortunately did not result in any serious injuries. (Government's Response at pg. 5).

## Conclusion

Ultimately, we find that Defendant has presented no "extraordinary and compelling reasons" justifying his release as required by 18 U.S.C. § 3582(c)(1)(A)(i). Additionally, consideration of the factors enumerated in 18 U.S.C. § 3553(a) heavily disfavors Defendant's release.

An Order follows.